**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VICTOR AGUILAR-RAMIREZ,** | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 3:26-1195** |
| **v.** | : | **(JUDGE MANNION)** |
| **WARDEN, FCI Lewisburg, *et al.*,** | : | |
| **Respondents** | : | |

**MEMORANDUM**

Pending before the court is petitioner Victor Aguilar-Ramirez's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. (**Doc. 1**). For the reasons stated herein, Aguilar-Ramirez's petition will be **DENIED WITHOUT PREJUDICE**.

## I. BACKGROUND

Petitioner Victor Aguilar-Ramirez is a citizen of El Salvador. (Doc. 11-2 at 1). Aguilar-Ramirez first entered the United States at an unknown location sometime on or before February 6, 2002, when he adjusted his immigration status to legal permanent resident. *Id.* at 2.

Since his initial arrival in the United States, Aguilar-Ramirez has been convicted of numerous crimes on multiple occasions, including: malicious destruction of property, theft, and robbery. *Id.* at 3. He has also twice been

removed to El Salvador, in 2012 and 2013. *Id.* at 2. He last re-entered the United States on March 21, 2014. (Doc. 11-4 at 2).

On December 3, 2025, Immigration and Customs Enforcement ("ICE") officers detained Aguilar-Ramirez. (Doc. 11-2). He has been ordered removed by an immigration judge because pursuant to §237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") as a noncitizen who has been convicted of an aggravated felony, and he remains in detention at FCI Lewisburg in Lewisburg, Pennsylvania. (Doc. 11-4).

The day after Aguilar-Ramirez was detained, the Government served him with a warrant of removal to Mexico. (Doc. 24-1, ¶17). On December 12, 2025, Aguilar-Ramirez was found not to have a credible fear of torture if removed to Mexico, and was added to the awaiting flight list for On-the-Manifest ("OTM") Mexico removal. *Id.*, ¶20. On February 4, 2026, Aguilar-Ramirez was served with an I-229(a) warning for failure to depart. *Id.*, ¶21. On May 29, 2026, Aguilar-Ramirez refused to get off the bus and proceed with his removal to Mexico at the Hidalgo, Texas point-of-entry. *Id.*, ¶25. Finally, on June 11, 2026, Aguilar-Ramirez was issued a notice of failure to comply with removal pursuant to 8 C.F.R. §241.4(g). *Id.*, ¶28.

On May 5, 2026, Aguilar-Ramirez filed the present petition for habeas corpus. (Doc. 1). That same day, the court dismissed several claims raised

in the petition and ordered Respondents to respond only to those claims concerning Aguilar-Ramirez's continued detention and the conditions of his confinement. (Docs. 4, 5). On May 19, 2026, Respondents filed their response to the petition. (Doc. 11). On July 1, 2026, Aguilar-Ramirez filed a reply to their response. (Doc. 20). On July 13, 2026, the court ordered Respondents to file a supplemental response providing the court with all information related to the specific efforts the Government has taken to effectuate Aguilar-Ramirez's removal. (Doc. 21). On July 31, 2026, the Respondents filed their supplemental response. (Doc. 24). Thus, the petition is now ripe for disposition.

## II. LEGAL STANDARD

Under 28 U.S.C. §2241, district courts have the authority to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(1), (3).

Furthermore, "[i]t is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody." *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972). However, "[w]ith respect to certain factual issues, the burden of proof may

be shifted to the state because of specific policy considerations or because the available evidence is likely to be in the hands of the state." *Id.*

## III. DISCUSSION

### a. Jurisdiction

The court's authority to hear noncitizen habeas petitions under 28 U.S.C. §2241 is limited in some circumstances by 8 U.S.C. §§1252(g), (b)(9), and (a)(2)(B)(ii).

§1252(g) states "[e]xcept as provided in this section and notwithstanding any other provisions of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. §1252(g). Here, the court's jurisdiction is not barred by §1252(g) as the petition does not challenge the commencement of removal proceedings, the Attorney General's decision to adjudicate, nor the execution of a removal order. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (finding that §1252(g)(2) divests the court of jurisdiction "only to [these] three discrete actions").

§1252(b)(9) states "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceedings brought to remove an alien from

the United States . . . shall be available only on judicial review of a final order [of removal].” 8 U.S.C. §1252(b)(9). Here, the court’s jurisdiction is not barred by §1252(b)(9) as the petition does not seek review of any law or fact arising from a removal proceeding. *See E.O.H.C. v. Sec’y United States Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (finding that §1252(b)(9) “does not reach claims that are independent of, or wholly collateral to, the removal process”).

§1252(a)(2)(B)(ii) prohibits district courts from reviewing discretionary detention choices of the Attorney General or Secretary of Homeland Security. 8 U.S.C. §1252(a)(2)(B)(ii). Here, the court’s jurisdiction is not barred by §1252(a)(2)(B)(ii) as the petition does not challenge a discretionary detention choice. *See Patel v. O’Neil*, 2025 WL 3516865, at *3 (M.D.Pa. Dec. 8, 2025) (“section 1252(a)(2)(B)(ii) is inapposite because the Respondents’ ‘statutory detention power is “not a matter of discretion” to which §1252(a)(2)(B)(ii) applies’”) (internal citations omitted).

Finally, courts considering the issue of whether a petitioner is being wrongfully detained without a bond hearing “have almost universally held that they have jurisdiction,” and, therefore, that §§1252(g), (b)(9), and (a)(2)(B)(ii) do not apply. *Patel*, 2025 WL 3516865 at *3.

**b. Exhaustion of administrative remedies**

"A petitioner challenging agency action must generally first exhaust administrative remedies; however, in habeas proceedings, 'exhaustion exists as a judicially created doctrine applied at the Court's discretion.'" *Vadel v. Lowe*, 2025 WL 3772059, at *3 (M.D.Pa. Dec. 31, 2025) (quoting *Kashranov v. Jamison*, 2025 WL 3188399, at *3 (E.D.Pa. Nov. 14, 2025)). Here, further administrative review would be pointless, as Aguilar-Ramirez is detained under 8 U.S.C. §1231, which precludes immigration judges from holding a bond hearing. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022) (holding that the Government is not required to offer bond hearings after six months of detention to noncitizens held beyond the 90-day removal period set by §1231).

**c. Merits**

Aguilar-Ramirez argues that his detention has become unlawfully prolonged and that he, therefore, should be released from custody. Where an immigration detainee has been given a final order of removal, his detention is governed by 8 U.S.C. §1231. Under the statute, the Government "shall remove the alien from the United States within a period of 90 days." 8 U.S.C. §1231(a)(1)(A). This ninety day "removal period begins on the latest of the following: (i) The date the order of removal becomes administratively

final[;] (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order[;] (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §1231(a)(1)(B).

In *Zadvydas v. Davis*, the Supreme Court held that the Government may not detain aliens indefinitely following a final order of removal. 533 U.S. 678, 689 (2001). Indeed, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. However, the court noted that it "doubt[ed] that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time." *Id.* at 701. Accordingly, the court reasoned that detention for up to 6 months following a final order of removal is "presumptively reasonable." *Id.*

"After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Further, "for detention to remain reasonable, as the period of prior postremoval grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

Here, while Aguilar-Ramirez has been subject to a final order of removal for several years, he has only been in ICE custody since December 3, 2025, and the time before then does not factor into the court's consideration of the length of his detention. Aguilar-Ramirez has been detained for over eight months, which exceeds the presumptively reasonable period of six months. However, under §241(a)(1)(C) of the INA, "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien . . . acts to prevent the alien's removal subject to an order of removal." While neither the statute nor case law pertaining to the statute provide how long this extended removal period may last, it stands to reason—given that any period of time exceeding six months is presumptively unreasonable during the initial removal period—that it may not exceed six months, assuming that the extended period is an effective reset of the timeline to remove.

Here, 90 days, let alone six months, have not passed since Aguilar-Ramirez's refusal to comply with his removal to Mexico on May 29, 2026. Moreover, Aguilar-Ramirez had not yet been in detention for six months when he filed the present petition on May 5, 2026. Finally, the Court finds that the Government has made efforts to effectuate Aguilar-Ramirez's removal, and that his removal is likely imminent. If, however, it turns out that

Aguilar-Ramirez's detention later becomes unreasonably prolonged, he may file subsequent habeas petitions.

## IV. CONCLUSION

For the foregoing reasons, Aguilar-Ramirez's petition for a writ of habeas corpus under 28 U.S.C. §2241 will be **DENIED WITHOUT PREJUDICE**. An appropriate order shall issue.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 8/17/26
26-1195-01